UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA L.<br>o/b/o T.L.,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 1:17-cv-00542-CCR

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND DENYING THE COMMISSIONER'S MOTION FOR
JUDGMENT ON THE PLEADINGS**
(Docs. 9 & 14)

Plaintiff Sabrina Lewis ("Plaintiff") brings this action, on behalf of her minor

child, Tajahnae Char Bria Lewis ("T.C.B.L."), for Supplemental Security Income ("SSI")

under the Social Security Act ("SSA"), seeking reversal of the Social Security

Commissioner's decision that T.C.B.L. is not disabled. On November 20, 2017, Plaintiff

filed a motion for judgment on the pleadings seeking to reverse the decision of the

Commissioner (Doc. 9). On February 27, 2018, the Commissioner filed a motion for

judgment on the pleadings asking the court to affirm the decision of the Commissioner

(Doc. 14). Plaintiff replied on March 15, 2018, at which point the court took the pending

motions under advisement.

Plaintiff identifies three errors in Administrative Law Judge ("ALJ") Bryce

Baird's decision: (1) the ALJ failed to properly address and weigh the opinions of

T.C.B.L.'s medical sources, T.C.B.L.'s teachers, and the state agency consultants; (2) the

ALJ failed to properly evaluate T.C.B.L.'s functioning in three of the six functional

domains described in 20 C.F.R. § 416.926a(b)(1)(i)-(vi); and (3) the ALJ erred in his

evaluation of Plaintiff's credibility.

Plaintiff is represented by Amy C. Chambers, Esq., and Kenneth R. Hiller, Esq. The Commissioner is represented by Special Assistant United States Attorney Catharine Zurbrugg.

## I.      Procedural Background.

On October 2, 2013, Plaintiff protectively filed an application for SSI on behalf of T.C.B.L. This claim was denied on January 24, 2014. Plaintiff filed a written request for a hearing on January 28, 2014. After multiple postponements, a hearing was held on June 30, 2016 in Buffalo, New York. Plaintiff appeared and testified at the hearing before ALJ Baird. On September 9, 2016, ALJ Baird issued a decision finding that T.C.B.L. was not disabled. The Appeals Council denied Plaintiff's request for review on April 19, 2017. As a result, ALJ Baird's decision stands as the Commissioner's final decision.

## II.     Factual Background.

T.C.B.L. was born on September 12, 2003. Although T.C.B.L. was placed in foster care for some portion of her childhood, throughout the period of alleged disability, she lived with Plaintiff, who is her mother. T.C.B.L. has six siblings, but at the time of the hearing in 2016, only one of her siblings resided with her and her mother. T.C.B.L. has repeated at least two grades, started first grade at age eight, and was on an Individualized Education Plan ("IEP") for most of the disability period after she was determined to have a learning disability.

In 2009, when T.C.B.L. was in kindergarten, she was referred for evaluation by her foster parents due to concerns about her speech and academic performance. On or about June 7, 2009, Annmarie Robertson, a school psychologist at Buffalo United Charter School, conducted a psycho-educational evaluation. Ms. Robertson found that T.C.B.L.'s speech was "of a normal rate, tone and volume," however, T.C.B.L. committed "severe articulation errors [making] it extremely difficult to understand her." (AR 312.) Results from the Wechsler Preschool and Primary Scale of Intelligence, Third Edition revealed that T.C.B.L. had a Full Scale IQ Score of eighty-one and that she was

functioning "in the low average range on a standardized measure of intelligence." (AR 313.)

On June 24, 2009, Darlene Germanovich, Educational Specialist, completed an educational evaluation for T.C.B.L. The results of the Woodcock Johnson III Tests of Achievement, Form B showed that T.C.B.L.'s pre-academic skills were developing at an average rate in comparison to similarly-aged peers, but that she struggled to stay on task in the classroom. Ms. Germanovich observed that T.C.B.L. "showed an excellent effort" during the examination, but that she "really could not remain still, and needed frequent redirection back to task." (AR 317.) As a result of this and other testing, T.C.B.L. was found eligible to receive special education services for her speech impairment. Due to her academic performance, she was held back to complete a second year of kindergarten.

On December 15, 2009, Kirsten Calkin Osher, Nationally Certified School Psychologist, completed a psycho-educational evaluation of T.C.B.L. Ms. Osher noted that T.C.B.L. was easily distractible, but that her classroom teachers at the time "[did] not have significant concerns [about] her." Classroom observations revealed that T.C.B.L. was engaged in activities and was able to follow whole group instructions.

In February 2012, at the age of eight, T.C.B.L. began receiving mental health counseling services at Monsignor Carr Institute ("MCI"), although there were significant periods of no services until at least June 2013. Gerald E. Turk, a Psychiatric Nurse Practitioner at MCI, conducted an initial psychiatric evaluation of T.C.B.L. on April 12, 2012. Plaintiff reported to Mr. Turk that T.C.B.L. had angry outbursts, was often moody and argumentative, was fidgety with her hands and feet, and was very easily distractible. Mr. Turk found that T.C.B.L. had a "short attention span" and "little appreciation for the impact of her behaviors on herself and others." (AR 331.) He described her thought process as "unreasonable" and noted that she had "rational as well as irrational fears primarily associated with concerns of being placed outside the home." *Id.* He found that her judgment was "impaired" which was "evidenced by a history of impulsivity and unpredictability." *Id.* Mr. Turk diagnosed T.C.B.L. with Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), and Separation Anxiety

3

Disorder. After this evaluation, T.C.B.L. was prescribed Dextroamphetamine. In June 2012, she was switched to Adderall.

On July 12, 2012, Kiera A. Privitera, Licensed Speech-Language Pathologist, administered the Clinical Evaluation of Language Fundamentals-4th Edition ("CELF-4") to assess T.C.B.L.'s receptive and expressive language skills. T.C.B.L. received a standard score of seventy-three, which corresponds to the fourth percentile. Ms. Privitera opined that T.C.B.L.'s language skills were "moderately delayed overall when compared to age-matched peers." (AR 356.) T.C.B.L. demonstrated "difficulty following simple and complex directions" and "difficulty with consistently formulating sentences containing age appropriate syntax and morphological structures." (AR 356-57.) Ms. Privitera also administered the Goldman-Fristoe Test of Articulation-2nd Edition ("GFTA-2") to assess T.C.B.L.'s speech sound production. T.C.B.L. received a standard score of ninety-three on this test, which corresponds to the ninth percentile. Her speech intelligibility was found to be 100% at the word level and 98% at the conversation level. Based on this test, Ms. Privitera concluded that T.C.B.L.'s speech production skills were "mildly functionally delayed." (AR 358.) T.C.B.L. was diagnosed with mixed receptive and expressive language delay and speech production delay. Ms. Privitera stated that T.C.B.L.'s prognosis was "good to achieve age-appropriate receptive language, expressive language, and speech sound production given skilled intervention." (AR 359.)

On January 10, 2014, Elizabeth Mobley, Licensed Speech-Language Pathologist, administered the CELF-4. T.C.B.L. performed at a lower level than she had in the same test in 2012, achieving a standard score of seventy, which corresponds to the second percentile. The test results indicated that T.C.B.L.'s overall language skills were "severely delayed overall when compared to age-matched peers." (AR 449.) While Ms. Mobley observed that T.C.B.L.'s speech production was within normal limits, she found that T.C.B.L. had "extreme difficulty" in following complex directions without additional cueing and in her immediate recall of spoken language. (AR 451.)

On July 27, 2015, Annmarie Barrett, Certified School Psychologist, administered the Woodcock Johnson Test of Achievement, Third Edition. T.C.B.L. scored between

"extremely low" and "low average" in each academic subtest. (AR 459.) Ms. Barrett noted that T.C.B.L. was "unable to construct simplistic [six to twelve] word sentences using appropriate punctuation" and experienced "difficulty expressing her thoughts in written language." (AR 460.)

Katie Benson, Licensed Speech-Language Pathologist, met with T.C.B.L. twice per week for thirty minute sessions from 2013 through 2016 to provide speech and language therapy. In a report dated January 6, 2016, Ms. Benson indicated that T.C.B.L. had a "very serious problem" understanding school and content vocabulary and reading and comprehending written material. (AR 281.) She opined that T.C.B.L. had a "serious problem" learning new material and recalling previously learned material, an "obvious problem" providing organized oral explanations and expressing ideas in written form, and a "slight problem" comprehending oral instructions. *Id.* She noted that "[d]uring therapy sessions, the student requires a great deal of support via verbal cues, repetition of information, extra examples, and modeling." *Id.*

In the domain of "attending and completing tasks[,]" Ms. Benson found that T.C.B.L. had a "serious problem" focusing long enough to finish an assigned task and completing work accurately without careless mistakes, and an "obvious problem" working at a reasonable pace. (AR 282.) However, she found that T.C.B.L. had "no problem" carrying out single-step instructions or waiting to take turns. *Id.* She believed that T.C.B.L. had a "slight problem" paying attention when spoken to directly, carrying out multi-step instructions, changing from one activity to another without being disruptive, and working without distracting herself or others. *Id.*

In the domain of "interacting and relating with others[,]" Ms. Benson found that T.C.B.L. exhibited no "serious" or "very serious" problems. (AR 283.) Ms. Benson stated that T.C.B.L. also exhibited "no problem" making and keeping friends, expressing anger appropriately, obeying adults in authority, relating experiences, or introducing and maintaining relevant and appropriate topics of conversation. (AR 283.) She found that T.C.B.L. had a "slight problem" playing cooperatively, seeking attention appropriately,

asking permission appropriately, and following rules. *Id.* She found that it was not necessary to implement behavior modification strategies for T.C.B.L.

In contrast, Ms. Benson noted that T.C.B.L. had an "obvious problem" using adequate vocabulary and grammar to express her thoughts. *Id.* She found that T.C.B.L. had "no problems" caring for herself. (AR 285.)

## A.     Reports from T.C.B.L.'s Teachers.

In September 2013, T.C.B.L.'s teacher Jeanette Adams completed a questionnaire to assess T.C.B.L.'s functionality related to a New York State disability determination. Ms. Adams had taught T.C.B.L. English, math, and writing for a period of four months. Although T.C.B.L. was in third grade at the time, she was performing at a first grade level in reading, math, and written language. In the domain of "acquiring and using information[,]" Ms. Adams found that T.C.B.L. had a "very serious problem" reading and comprehending written material and expressing ideas in written form, and a "serious problem" understanding school and content vocabulary, recalling and applying previously learned material and applying problem-solving skills in class discussions. (AR 236.) She further observed that T.C.B.L. "lacked independence." *Id.*

In the domain of "attending and completing tasks[,]" Ms. Adams opined that T.C.B.L. had a "very serious problem" focusing long enough to finish assigned tasks, completing assignments, and working at a reasonable pace. (AR 237.) She noted that T.C.B.L. had a "serious problem" refocusing to task when necessary, carrying out multi-step instructions, and working without distracting herself or others. *Id.* She reported that T.C.B.L. had "difficulty sustaining focus for long periods of time[,]" she could not accurately pace herself, and she was "extremely slow in finishing assignments." *Id.*

In the domain of "interacting and relating with others[,]" Ms. Adams found that T.C.B.L. had a "serious problem" using adequate vocabulary and grammar to express her thoughts and ideas, and an "obvious problem" seeking attention appropriately, relating experiences, using language appropriate to the conversation, and taking turns in a conversation. (AR 238.) She found that T.C.B.L. had only a "slight problem" playing cooperatively with other children, making and keeping friends, and expressing anger

appropriately. *Id.* Ms. Adams indicated that it had not been necessary to implement behavior modification strategies for T.C.B.L. In the domain of caring for herself, Ms. Adams found that T.C.B.L. had a "serious problem" knowing when to ask for help, but only a "slight problem" being patient when necessary, using good judgment regarding personal safety, responding appropriately to changes in her mood, and using appropriate coping skills. (AR 240.)

On January 6, 2016, Jamie Riddoch, T.C.B.L.'s fifth grade math teacher at King Center Charter School, completed a teacher evaluation based on six months of interactions with T.C.B.L. in the classroom. Ms. Riddoch noted an unusual degree of absenteeism, documenting that T.C.B.L. had been absent from school twelve days between November 9, 2015 and January 6, 2016. She found that T.C.B.L. had a "very serious problem" expressing ideas in written form and learning new material. (AR 254.) She asserted that T.C.B.L. had a "serious problem" understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, providing organized explanations, recalling and applying previously learned material, and applying problem solving skills. *Id.*

In the domain of "attending and completing tasks[,]" Ms. Riddoch noted that T.C.B.L. had a "very serious problem" completing class and homework assignments, and a "serious problem" carrying out multi-step instructions, completing work accurately without careless mistakes, working without distracting herself or others, and working at a reasonable pace. (AR 255.) She found that T.C.B.L. had an "obvious problem" focusing long enough to finish an assigned activity and organizing her school materials, but that she had "no problem" sustaining attention during play or taking turns. *Id.*

In the domain of "interacting and relating with others[,]" Ms. Riddoch concluded that T.C.B.L. had a "very serious problem" using adequate vocabulary and grammar to express thoughts, and a "serious problem" using language appropriate to the situation and listener. (AR 256.) However, she found that T.C.B.L. had "no problem" relating experiences and telling stories, and only a "slight problem" playing cooperatively with

other children, seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules, and respecting adults. *Id.* In the domain of caring for herself, Ms. Riddoch observed that while T.C.B.L. had a "very serious problem" knowing when to ask for help, she had "no problem" taking care of personal hygiene, caring for her physical needs, and using good judgment with regards to safety. (AR 258.)

On January 7, 2016, T.C.B.L.'s teacher Fawn Barlow completed a questionnaire evaluating T.C.B.L.'s abilities. At the time that she completed the questionnaire, Ms. Barlow had known T.C.B.L. for two years, during which she taught T.C.B.L. math, social studies, and language arts. She stated that T.C.B.L. "struggle[d] greatly with academics[,]" and noted that although she received special education services, it was difficult to provide these services effectively due to T.C.B.L.'s frequent absences. (AR 269.) She observed that T.C.B.L. had a "very serious problem" reading and comprehending written material, and a "serious problem" understanding school and content vocabulary and doing math problems. (AR 263.) She noted that T.C.B.L. struggled with independent work and needed "many reminders/prompt[s] to get class work done." *Id.*

In the domain of "attending and completing tasks[,]" Ms. Barlow documented that T.C.B.L. had a "serious problem" changing from one activity to another without being disruptive as well as working at a reasonable pace. (AR 264.) Ms. Barlow found that T.C.B.L. had an "obvious" problem refocusing, carrying out single or multi-step instructions, and completing assignments, but that she had "no problem" waiting to take turns. *Id.* She observed that T.C.B.L. "often shouts out to others or gets into petty arguments" and "sometimes takes long periods of time to complete work independently[.]" *Id.*

Ms. Barlow did not identify any limitations that she described as "serious" or "very serious" in the domain of "interacting and relating with others." (AR 265.) She found that T.C.B.L. had an "obvious problem" seeking attention appropriately and expressing anger appropriately, but only a "slight problem" in other areas such as playing

cooperatively, making friends, asking permission, following rules, and respecting adults. *Id.* Ms. Barlow stated that although T.C.B.L. had been "sent to the office a couple times for yelling out [and] arguing," she had improved her behavior over time. *Id.* She noted that T.C.B.L. had few problems in the domain of caring for herself.

On January 11, 2016, Tara Lombardo, who taught T.C.B.L. reading, writing, and math since September 2015, completed an evaluation. Ms. Lombardo observed that although T.C.B.L. was in fifth grade, she was reading at a second grade level. She noted that while T.C.B.L. "display[ed] more confidence during math assignments," she was still well below grade level. (AR 272.) She assessed that T.C.B.L. had a "very serious problem" reading and comprehending ideas in written form, and a "serious problem" understanding school and content vocabulary, doing math problems, providing organized oral explanations, learning new material, and recalling and applying previously learned material. *Id.*

In the domain of "attending and completing tasks[,]" Ms. Lombardo opined that T.C.B.L. had a "serious problem" focusing long enough to finish an assigned activity, refocusing, changing activities without being disruptive, completing assignments, and working without distracting herself or others. (AR 273.) She noted that T.C.B.L. "require[d] one-on-one assistance from a teacher or a higher function peer when completing independent work." *Id.* However, Ms. Lombardo found that T.C.B.L. had "no problem" sustaining attention during play or waiting to take turns, and that she had only a "slight problem" paying attention when spoken to directly and carrying out single-step instructions. *Id.*

In the domain of "interacting and relating with others[,]" Ms. Lombardo observed that T.C.B.L. had a "serious problem" seeking attention appropriately, expressing anger appropriately, following rules, and using adequate vocabulary and grammar to express her thoughts. (AR 274.) However, she noted that T.C.B.L. "receive[d] speech therapy which addresse[d] many of these vocabulary, grammar, conversation, and relevance issues." *Id.* Ms. Lombardo observed that T.C.B.L. faced some challenges in caring for

herself, commenting that she had a tendency to shut down when she deemed a task too difficult.

### B.    State Agency Consultants' Assessments.

In July 2012, state consultative examiner Kevin Duffy, Psy.D., conducted an in-person psychiatric evaluation of T.C.B.L. He noted that T.C.B.L. was "mildly impaired" in her ability to maintain attention and concentration. (AR 363.) He observed that her recent and remote memory skills were "mildly impaired due to concentration difficulties." *Id.* He stated that T.C.B.L. had average cognitive functioning and fair insight and judgment. Dr. Duffy opined that T.C.B.L. would experience "difficulty attending to, following, and understanding some age appropriate directions," but believed that she could "generally complete most age appropriate tasks[.]" *Id.* He also asserted that she could "adequately maintain appropriate social behavior" and interact adequately with both peers and adults. (AR 364.)

State agency consultant Jennifer Meyer, M.D., opined on T.C.B.L.'s medical limitations on two occasions based solely on her review of T.C.B.L.'s records. In August 2012, Dr. Meyer completed a Childhood Disability Evaluation Form, in which she asserted that T.C.B.L. had "less than marked" limitations in acquiring and using information and attending and completing tasks. (AR 420.) She found that T.C.B.L. had no limitations in her ability to interact and relate with others, recording her speech as "98% intelligible." In a Childhood Disability Evaluation completed in January 2014, Dr. Meyer found that T.C.B.L. had a less than marked limitation in all functional domains except health and physical well-being, in which she found that T.C.B.L. had no limitations.[1] She nonetheless concluded that T.C.B.L. had two severe medical impairments, ADHD and a speech and language impairment, with the former not treated with medication.

---

[1] Steve Bruno, an analyst at the New York State Office of Temporary and Disability Assistance reviewed T.C.B.L.'s record in January 2014. He recorded "marked [limitation] in two domains," while noting that "when [or] if this child is back on meds this might be expected to change." (AR 453.) Dr. Meyer rejected this conclusion.

In January 2014, state consultative examiner Kristina Luna, Psy.D., conducted an in-person psychiatric examination of T.C.B.L. She observed that T.C.B.L.'s speech was "stammering and mumbled" with "fair" intelligibility and that her attention and concentration were "[m]ildly impaired due to emotionality." (AR 444-45.) T.C.B.L. was able to count to five and perform simple subtraction, but was unable to divide twenty-four by eight. Dr. Luna also opined that T.C.B.L.'s recent and remote memory skills were "mildly impaired[,]" noting that she was able to recall three objects immediately, but only two of the three objects after a five-minute delay. (AR 445.) Dr. Luna further noted that T.C.B.L. was unable to recite three numerical digits backwards. Dr. Luna found that T.C.B.L. had "no limitations in her ability to attend to, follow and understand age-appropriate directions, complete age-appropriate tasks, and adequately maintain appropriate social behavior[.]" (AR 446.)

### C. Plaintiff's Function Report.

On or about September 23, 2013, Plaintiff completed a Function Report for T.C.B.L. In the Function Report, she noted that while T.C.B.L. could read and understand simple sentences and print her name, she could not tell time, add or subtract numbers over ten, spell most three to four letter words, or read and understand stories. Plaintiff checked boxes indicating that T.C.B.L. had friends her own age and generally got along with adults, including her teachers. With regard to T.C.B.L.'s attention span, Plaintiff indicated that T.C.B.L. could keep busy on her own and worked on arts and crafts projects, but that T.C.B.L. did not finish things that she started or complete her homework and household chores. Plaintiff stated that T.C.B.L. was able to take care of personal needs such as taking a shower, brushing her teeth, choosing her clothes, and picking up her things.

### D. Plaintiff's Testimony at the June 30, 2016 Hearing Before ALJ Baird.

At the June 30, 2016 hearing before ALJ Baird, Plaintiff testified that T.C.B.L., who was twelve years old at the time, was often "hyper and upset." (AR 57.) She stated that T.C.B.L. would often become "very frustrated and very angry" when asked to do a task that took a long time. *Id.* T.C.B.L. had a "very short" attention span, and struggled

to stay engaged with activities such as watching movies or reading books. (AR 68.) T.C.B.L. sometimes spelled words backwards and found it difficult to express herself.

Plaintiff testified that T.C.B.L. completed household chores, but sometimes lost focus and had to be redirected. She noted that T.C.B.L. "constantly" fought with her younger sister and sometimes made "disturbing" threats. (AR 59-60.) For instance, she stated that T.C.B.L. made comments to Plaintiff's one-year-old godson such as "you want me to punch you in your face?" and "I'm going to hurt you." (AR 68.)

Plaintiff also asserted that T.C.B.L. struggled in school and had to repeat kindergarten. At the time of the hearing, she had completed fifth grade, but would need to attend summer school to progress to sixth grade. The ALJ noted that T.C.B.L. was absent from school nineteen days in the first half of the 2015/2016 academic year, and only three of those absences were excused. Plaintiff explained that T.C.B.L. frequently woke up with headaches which caused her to miss school. Plaintiff also stated that some days T.C.B.L. told her that she did not want to go school because she had a test. Plaintiff acknowledged that she let T.C.B.L. stay home on some of those days. Plaintiff stated that T.C.B.L. did not like her school, and that she was looking to transfer her to a different school.

### III. ALJ Baird's September 9, 2016 Decision.

Under the SSA, an individual under the age of eighteen is entitled to SSI benefits when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A three-step sequential evaluation process is used to determine whether an individual under the age of eighteen is disabled. 20 C.F.R. § 416.924(a)-(d); *see also Phelps v. Colvin*, 20 F. Supp. 3d 392, 398 (W.D.N.Y. 2014). First, the ALJ determines whether the child is engaged in any substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is engaged in substantial gainful activity, he or she is not disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii). If the child is not engaged in substantial gainful activity, the ALJ proceeds to Step Two. At Step Two,

the ALJ determines whether the child has a medically severe impairment or combination of impairments that cause "more than minimal functional limitations[.]" 20 C.F.R. § 416.924(c). At Step Three, the ALJ determines whether the child's severe impairment(s) "meet[s], medically equal[s], or functionally equal[s]" the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d).

If a child's impairment(s) does not meet or equal a listed impairment, the ALJ will consider how a child functions in the following six domains: "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for yourself; and, (vi) [h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1). A child will be considered disabled if their impairments "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A "marked" limitation exists when the child's impairment(s) "interferes seriously with [his or her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation exists when the child's impairment(s) "interferes very seriously with [his or her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

On September 9, 2016, ALJ Baird denied Plaintiff's application for SSI benefits, finding that T.C.B.L. was not disabled. In so ruling, he determined that T.C.B.L. had not engaged in substantial gainful activity from the date of the application, October 2, 2013, through the date of his decision. At Step Two, the ALJ found that T.C.B.L. had the following severe impairments: "attention deficit hyperactivity disorder (ADHD), oppositional defiance disorder (ODD), and speech and language impairment[.]" (AR 24.) At Step Three, ALJ Baird concluded that T.C.B.L. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He proceeded to analyze whether her impairments functionally equaled the listings by determining the degree of her limitations in each of the six functional domains. He concluded that T.C.B.L. had "marked" limitations in the first domain, "acquiring and using information," but that she had no

limitations in any of the other five domains. (AR 35.) Because the ALJ found that T.C.B.L.'s impairments did not result in marked limitations in two domains of functioning or extreme limitations in one domain of functioning, he concluded that she was not disabled from October 2, 2013 through September 9, 2016.

## IV.   Conclusions of Law and Analysis.

### A.   Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted) (alteration in original).

### B.   Whether ALJ Baird Failed to Properly Address and Weigh the Opinions in the Record.

Plaintiff argues that ALJ Baird failed to properly evaluate the medical opinions of Ms. Osher, Ms. Mobley, and Ms. Benson. Plaintiff also contends that the ALJ failed to properly evaluate the 'other source' opinions of three of T.C.B.L.'s teachers, Ms. Riddoch, Ms. Barlow, and Ms. Lombardo, as well as Mr. Turk, a nurse practitioner. Finally, she argues that the ALJ erroneously assigned weight to the opinions of four agency consultants whose reports were "stale" by the time that he rendered his decision and which were purportedly inconsistent with the rest of the record. (Doc. 9-1 at 20.)

14

## 1. Whether ALJ Baird Failed to Properly Address and Weigh the Medical Opinions of Ms. Osher, Ms. Mobley, and Ms. Benson.

Under the Social Security Regulations, acceptable medical sources include "licensed psychologists" and "[q]ualified speech-language pathologists, for purposes of establishing speech or language impairments only." SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). Ms. Osher, Ms. Mobley, and Ms. Benson are therefore acceptable medical sources in their respective fields.

An ALJ will "always consider the medical opinions in [a] case" in determining whether a claimant is disabled. 20 C.F.R. § 404.1527(b). "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, at *2. Unless a treating source's medical opinion is given controlling weight, the ALJ is directed to consider the following factors in determining the weight to assign the opinions of a medical source: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the "relevant evidence" provided in support of the opinion, "particularly medical signs and laboratory findings"; (4) the consistency of the opinion with the record as a whole; (5) whether the treating physician is giving an opinion "about medical issues related to his or her area of specialty"; and (6) any other relevant factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

Plaintiff argues that the ALJ erred in failing to weigh Ms. Osher's opinion because he did not mention Ms. Osher's opinion in his determination. While an ALJ "may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date," *see Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007), an ALJ is not required to evaluate opinions that pre-date the filing of the application. *Williams v. Colvin*, 98 F. Supp. 3d 614, 631 (W.D.N.Y. 2015); *see also Krach v. Comm'r of Soc. Sec.*, 2014 WL 5290368, at *9 (N.D.N.Y. Oct. 15, 2014) ("the ALJ is under no obligation to consider evidence from a time before the relevant period"). Ms. Osher completed an evaluation of T.C.B.L. on December 15, 2009, however, T.C.B.L.'s application for SSI

benefits was not filed until October 2, 2013. ALJ Baird was not required to evaluate an opinion rendered four years before the relevant period began and did not err in failing to do so.

Plaintiff next argues that ALJ Baird erred in failing to indicate the weight he assigned to the opinion of Ms. Mobley. Ms. Mobley conducted an assessment of T.C.B.L.'s speech and language impairments on a single occasion in January 2014 as part of New York's disability determination process. ALJ Baird did not state how much weight, if any, he assigned to Ms. Mobley's opinion, but he discussed Ms. Mobley's assessment and considered her findings when evaluating T.C.B.L.'s performance in the functional domains. ALJs are not required to explicitly assign weight to every medical opinion in the record so long as those opinions are considered. *See Berry v. Comm'r of Soc. Sec.*, 2015 WL 4557374, at *14 (S.D.N.Y. July 29, 2015) (holding "an ALJ's failure to state expressly the weight given to the opinion of a consultative source does not require reversal, so long as the ALJ took the evaluation into account"); *Rodriguez v. Colvin*, 2014 WL 5038410, at *6 (S.D.N.Y. Sept. 29, 2014) (declining to remand where an ALJ considered an evaluation but "did not explicitly assign a specific, quantifiable weight to the evaluation"). The ALJ's failure to explicitly assign a weight to Ms. Mobley's opinion was therefore not reversible error.

With regard to Ms. Benson, Plaintiff argues that the ALJ failed to include her more restrictive findings in his decision, particularly her findings that T.C.B.L. had serious limitations in her ability to focus long enough to finish tasks and complete work without mistakes. ALJ Baird discussed Ms. Benson's findings at length and noted that he assigned "significant weight" to her opinions. (AR 33.) Additionally, the ALJ considered Ms. Benson's conclusions in the domain of attending and completing tasks, noting that, according to Ms. Benson, T.C.B.L. had "a serious problem focusing and completing work accurately." (AR 36.) Against this backdrop, there is no evidence that the ALJ failed to adequately consider Ms. Benson's opinions.

## 2. Whether ALJ Baird Failed to Properly Address and Weigh the "Other Source" Opinions of Mr. Turk, Ms. Riddoch, Ms. Barlow, and Ms. Lombardo.

In addition to evidence from acceptable medical sources, an ALJ "may use evidence from 'other sources' . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2. Other sources include both medical sources who are not "acceptable medical sources[,]" such as nurse practitioners, as well as non-medical sources such as school teachers, counselors, and parents. *Id.* Mr. Turk, a psychiatric nurse practitioner, as well as T.C.B.L.'s teachers Ms. Riddoch, Ms. Barlow, and Ms. Lombardo, are thus all appropriately characterized as "other sources."

An ALJ's decision "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. An ALJ should analyze "other source" opinions using the factors set forth in 20 C.F.R. § 404.1527(c), although "[n]ot every factor for weighing opinion evidence will apply in every case." *Id.* at *5. These factors include the nature and extent of the relationship between the source and the individual, the consistency of the opinion with other evidence, the degree to which the opinions are supported by evidence, how well the source explains the opinion, whether the source has a specialty, and any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Plaintiff contends that ALJ Baird failed to properly weigh the opinion of Mr. Turk because while he described Mr. Turk's opinions, he did not assign them any particular weight. Mr. Turk treated T.C.B.L. between February 2012 and June 2012, which was before the application for SSI benefits was filed. Because an ALJ is not required to evaluate opinions that pre-date the filing of the application, ALJ Baird did not err in failing to assign a weight to Mr. Turk's opinions. *See Williams*, 98 F. Supp. 3d at 631;

*Krach*, 2014 WL 5290368, at *9 ("the ALJ is under no obligation to consider evidence from a time before the relevant period").

Finally, Plaintiff asserts that ALJ Baird erred by failing to properly weigh the opinions of T.C.B.L.'s teachers, Ms. Riddoch, Ms. Barlow, and Ms. Lombardo. In his decision, ALJ Baird accorded "some weight" to Ms. Riddoch, Ms. Barlow, and Ms. Lombardo because "[a]s teachers, they are familiar with the progress and behavior that can reasonably be expected from a child of the claimant's age and ability." (AR 33.) He also noted that these teachers had "the opportunity to observe the claimant on a daily basis and have been able to take note of [her] behavior and [her] progress in school." *Id.* The ALJ cited their questionnaires in assessing T.C.B.L.'s limitations in the six functional domains. *See, e.g.,* AR 35 (noting that "claimant's teachers overwhelmingly agreed that the claimant has an obvious to a very serious problem" in acquiring and using information). Because ALJ Baird's discussion of the teachers' opinions and the weight assigned to them is sufficient to permit the court "to follow the adjudicator's reasoning," the ALJ did not err in his evaluations of the opinions of Ms. Riddoch, Ms. Barlow, and Ms. Lombardo. SSR 06-03p, 2006 WL 2329939, at *6.

### 3. Whether ALJ Baird Erroneously Assigned Weight to the Opinions of Agency Consultants.

Contending that ALJ Baird erred in the weight he assigned to the opinions of agency consultants Dr. Duffy, Dr. Luna, and Dr. Meyer, Plaintiff argues that these opinions were stale by the time ALJ Baird rendered his decision and are contradicted by the record as a whole. ALJ Baird assigned "significant weight" to Dr. Duffy's July 2012 opinion; "significant weight" to Dr. Meyer's August 2012 opinion; "some weight" to Dr. Meyer's January 2014 opinion; and "some weight" to Dr. Luna's January 2014 opinion. (AR 32-33.)

"The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record." *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012). An ALJ "may consider all evidence of record, including medical records and opinions dated prior to the

alleged onset date." *Pirtle*, 479 F.3d at 934. However, "medical source opinions that are 'conclusory, stale, and based on an incomplete medical record' may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016); *see also Jones v. Comm'r of Soc. Sec.*, 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (holding that a disability examiner's opinion that was "1.5 years stale, and did not account for [the plaintiff's] deteriorating condition" did not constitute substantial evidence); *Jones v. Colvin*, 2015 WL 4628972, at *4 (W.D.N.Y. Aug. 3, 2015) (finding that an ALJ improperly gave significant weight to consultative physicians who "did not have before them approximately four years of [p]laintiff's medical records").

Dr. Duffy's opinion from July 2012 and Dr. Meyer's opinion from August 2012 predate T.C.B.L.'s application for SSI benefits. At the time of ALJ Baird's decision, they were more than four years old.[2] The 2012 opinions of Dr. Duffy and Dr. Meyer are stale because more recent evidence revealed more significant limitations in T.C.B.L.'s functionality. *See Camille v. Colvin*, 652 F. App'x 25, 29 n.4 (2d Cir. 2016) (noting that while there is no "unqualified rule that a medical opinion is superseded by additional material in the record," an opinion based on an incomplete record may be considered stale where subsequent evidence differs materially from earlier evidence). The ALJ thus erred in assigning these consultative opinions significant weight without adequately explaining how they were supported by substantial evidence in the record for the relevant period. *See Griffith v. Astrue*, 2009 WL 909630, at *9 (W.D.N.Y. Mar. 31, 2009) (holding that reports which are "conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); *Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011) (where it was unclear whether an agency consultant had reviewed all of a claimant's "relevant medical information" in formulating his opinion, the court held that the opinion was not supported by substantial evidence).

---

[2] This delay is not solely attributable to ALJ Baird. He had to reschedule the hearing twice, first because T.C.B.L. was not present, and a second time because no one was available to sit with T.C.B.L. in the waiting room for the first portion of the proceeding.

Dr. Meyer's and Dr. Luna's January 2014 opinions pertain to the period of alleged disability. However, their evaluations were completed without the benefit of reviewing the reports of Ms. Barrett, Ms. Benson, Ms. Riddoch, Ms. Barlow, or Ms. Lombardo. In addition, their opinions, especially in the domain of attending and completing tasks, are inconsistent with more recent reports.[3] For example, Dr. Luna found that T.C.B.L. had "no limitations in her ability to attend to, follow and understand age-appropriate directions, complete age-appropriate tasks, adequately maintain appropriate social behavior, [and] respond appropriately to changes in environment." (AR 446.) In contrast, T.C.B.L.'s teachers found that she had a serious to very serious problem with several of these activities such as completing assignments and carrying out multi-step instructions.

ALJ Baird noted that he disagreed with Dr. Meyer's conclusion that T.C.B.L. had a less than marked limitation in the domain of acquiring and using information because it was inconsistent with the reports of T.C.B.L.'s teachers, her IEP accommodations, and her testing results. Thus, ALJ Baird properly considered consistency "with the record as a whole" in choosing to assign only some weight to the opinions of Dr. Meyer and Dr. Luna. 20 C.F.R. § 404.1527(c)(4). He nonetheless failed to adequately explain why he relied on their opinions in the determinations he rendered in many of the functional domains. Accordingly, while the court does not find error in the ALJ's decision to assign "some weight" to Dr. Meyer's and Dr. Luna's 2014 opinions, *see Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 204 (S.D.N.Y. 2018) (finding no error where an ALJ "relied on consistency with the record as a whole, a factor contained in 20 C.F.R. § 404.1527(c), in providing only "some weight" to [a consulting examiner's] opinion"), on remand, the court directs the ALJ to reconsider these opinions in light of more recent evidence, particularly as they relate to T.C.B.L.'s functioning in the domain of attending and completing tasks.

---

[3] ALJ Baird assigned Dr. Meyer's and Dr. Luna's 2014 opinions only "some weight" as a result of this inconsistency. (AR 32-33.)

### C. Whether ALJ Baird Failed to Properly Evaluate T.C.B.L.'s Functioning in Three of the Six Functional Domains.

Plaintiff argues that ALJ Baird erred in concluding that T.C.B.L. had less than marked limitations in the domains of attending and completing tasks and interacting and relating with others and no limitations in the domain of caring for oneself. The Commissioner contends that each of the ALJ's determinations in these functional domains is supported by substantial evidence.

#### 1. Interacting and Relating with Others.

In the domain of "interacting and relating with others," the ALJ considers "how well [the child can] initiate and sustain emotional connections with others, develop and use the language of [the child's] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). The Social Security Regulations provide that a school-aged child without an impairment should be able to function as follows in this domain:

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

ALJ Baird found that T.C.B.L. had a "less than marked" limitation in interacting and relating with others. (AR 37.) To support this conclusion, he noted that Plaintiff reported that T.C.B.L. "had friends her own age, can make new friends, and generally gets along with teachers and other adults." *Id.* While Ms. Barlow reported that T.C.B.L. was reprimanded at times for yelling and arguing with others, Ms. Barlow also noted that T.C.B.L. had "improved her social skills." *Id.* ALJ Baird observed that school records showed that T.C.B.L. got along with most students, and school officials found no need to address any social issues when drafting her IEP. He also noted that Dr. Luna and Dr. Duffy concluded that T.C.B.L. had "appropriate and adequate social skills." *Id.*

Testing revealed that while T.C.B.L. had some severe impairments in her language skills, her speech production was within normal limits and she was 100% intelligible. Ms. Riddoch, Ms. Barlow, and Ms. Lombardo all agreed that T.C.B.L. had some problems functioning in this domain, however, they all noted that the problems were not so severe as to necessitate the implementation of behavior modification strategies. Additionally, notes from an IEP meeting indicate that T.C.B.L.'s relationships with peers and adults had improved and that she was "often found sharing [or] helping friends in her class." (AR 428.) ALJ Baird's conclusion that T.C.B.L. had less than marked limitations in interacting and relating with others is thus supported by substantial evidence in the record.

## 2. Caring for Oneself.

In the domain of caring for oneself, the ALJ considers "how well [the child can] maintain a healthy emotional and physical state, including how well [the child] get[s] [their] physical and emotional wants and needs met in appropriate ways; how [the child] cope[s] with stress and changes in your environment; and whether [the child can] take care of [their] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). The Social Security Regulations provide that a school-aged child without an impairment should be able to function as follows in this domain:

> You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. § 416.926a(k)(2)(iv).

ALJ Baird found that T.C.B.L. had no limitation in her ability to care for herself, observing that although a few of T.C.B.L.'s teachers noted some limitations in this area,

the evidence "overwhelmingly suggest[ed]" that the claimant was able to "perform personal hygiene, dress, and feed herself independently." These findings are supported by substantial evidence and consistent with the record as a whole.

Plaintiff stated in a Function Report that T.C.B.L. was able to take a shower without help, choose clothes by herself, eat by herself, pick up and put away toys, help around the house, obey safety rules, and accept criticism. Ms. Benson, who knew T.C.B.L. over a three-year period, opined that T.C.B.L. had no problems caring for herself. Although some of T.C.B.L.'s teachers noted that she had outbursts in the classroom, they generally found that she had no problem or only a slight problem completing many of the activities related to personal care. While Ms. Riddoch, Ms. Barlow, and Ms. Lombardo observed that T.C.B.L. had a serious problem knowing when to ask for help, notes from an IEP meeting in 2013 indicate that one of T.C.B.L.'s strengths is seeking assistance when she needs it.

Although the record contained mixed opinions regarding T.C.B.L.'s limitations in the area of personal care, because ALJ Baird's conclusion is supported by substantial evidence, it must be upheld on appeal. *See Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 425-26 (N.D.N.Y. 2012) (holding that where the record was "inconclusive" on a child's functioning in one domain, the court was required to uphold an ALJ's decision provided it was supported by substantial evidence).

### 3. Attending and Completing Tasks.

Within the domain of "attending and completing tasks," the ALJ considers how well a child can "focus and maintain . . . attention, and how well [the child can] begin, carry through, and finish . . . activities, including the pace at which [the child can] perform activities and the ease with which [the child can] change them." 20 C.F.R. § 416.926a(h). The Social Security Regulations provide that a school-aged child without an impairment should be able to function as follows in this domain:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless

mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

ALJ Baird found that T.C.B.L. had a "less than marked" limitation in attending and completing tasks. (AR 36.) In support of this finding, ALJ Baird noted that Ms. Benson found that T.C.B.L. had only a "slight problem" paying attention, carrying out multi-step tasks, and changing from one activity to another. *Id.* He found that while a review of the evidence "show[ed] that the claimant ha[d] demonstrated a short attention span[,]" T.C.B.L. reportedly exhibited "good concentration and memory" after receiving medication.[4] *Id.* ALJ Baird observed that Dr. Duffy found that T.C.B.L. was able to perform simple mathematical calculations and recall three out of three objects immediately and after a five minute delay. He cited Dr. Luna's finding that T.C.B.L. could complete simple subtraction and recall two out of three objects after a five minute delay. He also noted that T.C.B.L. "displayed good attention during a speech and language evaluation[.]" *Id.* Although the ALJ's observations are accurate, they reflect only the most favorable parts of the record. *See Goins ex rel. J.D.G. v. Berryhill*, 2017 WL 5019273, at *4 (W.D.N.Y. Nov. 3, 2017) ("In evaluating the domains of functioning, ALJs may not cherry pick evidence by crediting evidence that supports administrative

---

[4] ALJ Baird noted that after receiving medication, T.C.B.L. demonstrated good attention and memory, citing to a checklist form from 2012 where Mr. Turk had checked a box labeled "concentration-good[.]" (AR 328.) At the time the checklist was filled out, T.C.B.L. was discontinuing the ADHD medication she had previously been prescribed. Additionally, this checklist is of limited evidentiary value in light of Mr. Turk's notes which state that T.C.B.L.'s "cognition and memory are associated with a short attention span." (AR 331.) Finally, "[t]he fact that the plaintiff improved with medication does not preclude a finding of marked limitations in any domain." *F.S. v. Astrue*, 2012 WL 514944, at *16 (N.D.N.Y. Feb. 15, 2012) (internal quotation marks omitted).

findings while ignoring conflicting evidence from the same source.") (internal quotation marks omitted).

The record is replete with evidence that T.C.B.L. has serious and sustained difficulties in the domain of attending and completing tasks. For instance, Ms. Benson, whose opinion ALJ Baird assigned significant weight, opined that T.C.B.L. had a "serious problem" focusing and completing work accurately without careless mistakes, and an "obvious problem" working at a reasonable pace. (AR 282.) Similarly, Ms. Barlow noted that T.C.B.L. "takes long periods of time to complete work independently and needs a great deal of assistance with her classwork." (AR 264.) Ms. Barlow also stated that T.C.B.L. was "easily distracted" and had a "serious problem" changing from one activity to another without being disruptive, often shouting out to others or getting into petty arguments. *Id.* Ms. Lombardo found that T.C.B.L. "requires many reminders throughout the day to stay on task" and "requires one-on-one assistance from a teacher or a higher functioning peer when completing independent work."[5] (AR 273.) Ms. Lombardo noted that T.C.B.L. "exhibits most frustration during independent tasks, usually because she lacks a certain skill set[.]" (AR 276.) The Social Security Regulations dictate that sources such as teachers are "valuable sources of evidence for assessing impairment severity and functioning" because of their "close contact with the individuals" over a period of time. SSR 06-03p, 2006 WL 2329939, at *3.[6] ALJ Baird acknowledged that T.C.B.L.'s teachers had daily contact with her and thus had the

---

[5] Social Security Regulations state that "[t]he need for frequent prompting demonstrates that the child is not paying attention as appropriately, effectively, or independently as children of the same age who do not have impairments. Despite the fact that the child is paying attention with prompting, this child is not functioning well in this domain." SSR 09-4P, 2009 WL 396033, at *2.

[6] *See also Mohamed v. Astrue*, 2010 WL 2640541, at *4 (W.D.N.Y. June 29, 2010) ("The opinion of a teacher who works with a child on a daily basis and observes her in a social setting with peers, as well as adults, is an invaluable method to ascertain the severity of an impairment and requires careful consideration."); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 178 (N.D.N.Y. 2010) (noting that "[t]he regulations instruct ALJs to consider all relevant evidence in determining a child's functioning, including information from the child's teachers").

chance to monitor her progress and behavior. Despite this observation, his conclusion in this domain is at odds with the observations he credits.

In addition to teachers' reports, T.C.B.L.'s IEP indicated that she received daily interventions to assist her in overcoming deficiencies in attention and concentration, including reminders to refocus, a special seating arrangement, and additional time to complete her assignments. Testing conducted by Ms. Mobley revealed that T.C.B.L. had "extreme difficulty" in following complex directions without additional cueing and extreme difficulty in her immediate recall of spoken language. (AR 451.) In an achievement test administered by Ms. Barrett in 2015, T.C.B.L. scored between "extremely low" and "low average" in each academic subtest. (AR 459.)

The Commissioner argues that Plaintiff "presents an alternative view of the same evidence that the ALJ considered[,]" and that this alternative view does not warrant a remand where substantial evidence supports the ALJ's findings. (Doc. 14-1 at 16.) It is true that the role of the district court on appeal is not to determine whether substantial evidence might support an alternate outcome, but rather to determine whether the findings of the ALJ are "supported by substantial evidence." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, the overwhelming evidence indicates that T.C.B.L.'s ADHD interferes seriously with her ability to attend to and complete daily activities. The evidence that ALJ Baird relies on to the contrary is largely derived from sources that had either a limited or no opportunity to observe T.C.B.L. Even these sources noted at least some level of difficulty in T.C.B.L.'s ability to maintain attention and concentration sufficient to warrant an ADHD diagnosis.

For the foregoing reasons, ALJ Baird's conclusion that T.C.B.L. has a "less than marked" limitation in the domain of attending and completing tasks is not supported by substantial evidence. *See* 20 C.F.R. § 416.926a(h)(3) (stating that repeatedly becoming sidetracked from activities, giving up on tasks, and requiring extra supervision to stay engaged are examples of "limited functioning" in this domain); *Smith ex rel. J.H. v. Colvin*, 935 F. Supp. 2d 496, 506 (N.D.N.Y. 2013) (holding that a finding of "less than marked limitation" in attending and completing tasks was not supported by the record

where claimant had "obvious problems focusing long enough to finish a task or to complete a homework assignment" and required redirection from teachers); *Archer ex rel. J.J.P.*, 910 F. Supp. 2d at 425 (holding that a claimant had a "marked limitation" in attending and completing tasks where the child was distracted by objects and sounds in the classroom, had a hard time attending to tasks, and required prompts to refocus).

A child is considered disabled if their impairments "result in 'marked' limitations in two domains of functioning[.]" 20 C.F.R. § 416.926a(a). A child has a "marked" limitation in a domain if her impairment "interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). ALJ Baird found that T.C.B.L. has marked limitations in the domain of acquiring and using information. On remand, the ALJ is directed to disregard stale opinions, obtain additional information if necessary, and re-determine whether T.C.B.L. has a marked limitation in the additional area of attending and completing tasks. *See Smith ex rel. J.H.*, 935 F. Supp. 2d at 507 ("[r]emand for further consideration is appropriate where, as here, there is not substantial evidence to support the hearing officer's decision, yet the record does not support an outright reversal"). In so doing, he should also consider the "effects of structured or supportive settings" on T.C.B.L.'s ability to function normally. 20 C.F.R. § 416.924a(b)(5).[7]

### D. Whether ALJ Baird Erred in his Evaluation of Plaintiff's Credibility.

Plaintiff contends that ALJ Baird erred in failing to properly weigh her credibility. She further argues that the ALJ "diminished her testimony" even though it was consistent

---

[7] SSA regulations provide:

> [I]f your symptoms or signs are controlled or reduced in a structured setting, we will consider how well you are functioning in the setting and the nature of the setting in which you are functioning (e.g., home or a special class); the amount of help you need from your parents, teachers, or others to function as well as you do; adjustments you make to structure your environment; and how you would function without the structured or supportive setting.

20 C.F.R. § 416.924a(b)(5)(iv)(E).

with the record and provided no clear explanation of the aspects of her testimony which he found to be contradictory. (Doc. 9-1 at 29.)

When supported by specific reasons, "an ALJ's credibility determination is generally entitled to deference on appeal." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013). It is the function of the Commissioner, not the court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In cases where the claimant is a child, "the ALJ is free to accept or reject testimony of a claimant's parent." *Hickman ex rel. M.A.H.*, 728 F. Supp. 2d at 181 (citing *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). However, "the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Hickman ex rel. M.A.H.*, 728 F. Supp. 2d at 181.

Here, ALJ Baird determined that the evidence in the record did not support some of Plaintiff's contentions and therefore assigned her testimony "minimal weight." (AR 34.) Contrary to Plaintiff's argument, ALJ Baird provided sufficient reasons for his conclusion. For example, although Plaintiff asserted that T.C.B.L. had marked limitations in interacting and relating to others, ALJ Baird found that these assertions were inconsistent with the opinions of Dr. Benson, Ms. Lombardo, Dr. Duffy, and Dr. Luna. He noted, for instance, that Plaintiff's opinion that T.C.B.L. did not interact and relate well to others was contradicted by Ms. Lombardo's belief that T.C.B.L. did not require implementation of any behavior modification strategies, as well as Dr. Benson's reports that T.C.B.L. had "no more than a slight problem interacting with others[.]" (AR 34.) Additionally, ALJ Baird found that some of Plaintiff's conclusions regarding T.C.B.L.'s limitations were inconsistent with her own statements. For instance, he noted that Plaintiff's statements that T.C.B.L. "has friends her age, can make friends, and

generally gets along with teachers and other adults" were inconsistent with her opinion that T.C.B.L. had a "marked social limitation." (AR 33.)

ALJ Baird assessed Plaintiff's testimony and provided an adequate explanation of his reasons for assigning her opinions minimal weight. Because the reasons he provided were supported by substantial evidence in the record, including teacher questionnaires and medical reports, the court cannot disturb his assessment on appeal even if it might reach a different conclusion were it to engage in its own credibility determination. *See Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 152-53 (N.D.N.Y. 2012) (affirming a credibility determination of minor claimant's parent where the ALJ "articulated the inconsistencies upon which he relied in discrediting [the parent's] testimony"); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (affirming the ALJ's credibility findings where they were "closely and affirmatively linked to substantial evidence").

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motion for judgment on the pleadings (Doc. 9), DENIES the Commissioner's motion for judgment on the pleadings (Doc. 14), and REMANDS the case for proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, Vermont, this 11ᵗʰ day of December, 2018.

_____
Christina Reiss, District Judge
United States District Court